**Dated: February 03, 2020**

ORDERED.

Roberta A. Colton
United States Bankruptcy Judge

**UNITED STATES BANKRUPTCY COURT**
**MIDDLE DISTRICT OF FLORIDA**
**TAMPA DIVISION**
www.flmb.uscourts.gov

In re

Leana M Gomes,

Debtor.

Case No. 8:18-bk-07978-RCT
Chapter 13

## MEMORANDUM, DECISION, AND FINDINGS OF FACT

On December 19-20, 2019, the Court conducted a trial on Debtor, Leana Gomes' (the "Debtor") Motion to Determine Secured Status of Edwin Taylor Corporation and to Strip Lien With Request for Attorney Fees (Doc. 65); Motion to Determine Secured Status of Sole Law, PLLC and to Strip Lien With Request for Attorney Fees (Doc. 67); and Motion to Determine Secured Status of Branch Banking and Trust Company and to Strip Lien With Request for Attorney Fees (Doc. 76) (collectively, the "Motions"), together with the responses and objections filed by creditors Edwin Taylor Corporation, Sole Law, PLLC, and Branch Banking and Trust Company (Docs. 90, 89, and 94, respectively).

Debtor seeks a valuation of a partially constructed residence on real property located at 1329 Jumana Loop, Apollo Beach, FL 33572 (the "Property"). Edwin Taylor Corporation (the "Edwin Taylor"); Sole Law, PLLC (the "Sole Law"); and Branch Banking and Trust Company

(k/n/a "Truist Bank") each assert a secured interest in the Property. Having considered the evidence and arguments of counsel, the Court values the Property at $300,000.

**Background**

Debtor filed a voluntary petition under chapter 13 of the Bankruptcy Code on September 20, 2018 (the "Petition Date"). She listed the Property on her bankruptcy schedules as non-exempt and valued the Property at $81,000. In her original Chapter 13 plan, she indicated that she would retain the Property and attempt to strip off liens in excess of the value of the Property. (Doc. 2). This intent is also reflected in the amended Chapter 13 plan that she filed in March of 2019. (Doc. 87).

Truist Bank filed a claim asserting a mortgage lien against the Property for $223,689.42. (Claim No. 3-2). Edwin Taylor filed a claim asserting a construction lien against the Property for $327,036.68. (Claim No. 2-2). Sole Law filed a claim asserting a "charging lien" in the amount of $32,919.96. (Claim No. 6-1).[1] In related state court litigation, Truist Bank's mortgage lien was adjudicated to have priority over Edwin Taylor's construction lien. (Doc. 71, Ex. A).

At trial, Debtor relied in large part on the testimony of Robert Baird. Mr. Baird was qualified as an expert in the field of valuation and appraisals without objection. Baird is the Florida Regional Manager of Value Centric where he serves as a residential and commercial appraiser. Baird is licensed by the State of Florida. Baird testified and prepared an appraisal report valuing the Property "as is" at $65,000. Baird represented that the Property's partial construction and long-term vacancy created a "stigma" in the neighborhood that would affect its value. Ultimately, Baird concluded that the home should be torn down and rebuilt because the cost of completion outweighed the home's value.

[1] On December 18, 2019, two days prior to the start of trial, Debtor and Sole Law agreed to value Sole Law's interest as a secured claim in the amount of $50,000. (Doc. 164).

Debtor also called Troy Schweiger, ("Schweiger"), Debtor's fiancé, who provided testimony related to the condition of the Property and what repairs have and have not been made. Schweiger is a contractor by trade, and he and Debtor chose the Property together and they originally intended to marry upon completion of the residence.

Edwin Taylor called Robert Konig ("Konig"), who was qualified as an expert in the field of construction costing. Konig performed two site "visits" of the Property.[2] Generally, Konig's testimony was helpful to set the parameters and guidelines for new construction in Florida, but his knowledge of the Property and estimate of correction costs were abstract and general. He testified that new construction would be approximately $137.11 per square foot and that the Property was 2,968 square feet. This yielded a value of $406,942. He estimated that the Property was seventy percent complete and would cost $6,500 to for corrective work.[3] Thus, his cost to complete was thirty percent of the cost of new construction plus correction costs. He did not think mold was a problem, but he did not perform a mold assessment. Taken in its entirety, Konig's testimony gave the Court an understanding of construction repairs generally and a ballpark value to repair the Property. But his testimony, as it related specifically to the Property, was not completely persuasive.

Edwin Taylor also called Mark Silverstein, managing principal of BayOne Appraisal Services, Inc. Mr. Silverstein is a state-certified appraiser and was qualified as an expert in property appraisal without objection. He was asked to determine the "as is" value of the Property and prepare a report.[4] Mr. Silverstein presented as a credible and qualified appraiser. He valued the property all the ways that appraisers generally value residential property. His report states that the home is 60-70% complete and he presented two "as is" values. Mr. Silverstein's "as is" market value is $316,400. His second valuation of the Property adds back $115,000 of

---

[2] The first inspection was on April 3, 2017 and the second inspection was via Facetime on an Ipad on March 20, 2019.

[3] Doc. 154-8. Konig's Report was admitted without objection.

entrepreneurial profit/risk for a value of $431,400. This second valuation assumes the Debtor is essentially the purchaser.

**Valuation Date**

Opinions differ on the proper valuation date when a court is deciding whether to strip off a lien in a Chapter 13 case.[5] The Bankruptcy Code § 506(a) provides little guidance on the appropriate valuation date, stating only that the value "shall be determined in light of the purpose of the valuation and the proposed disposition of such property. [6] However, courts use the petition date, recognizing it as the "watershed date" in bankruptcy proceedings.[7] Courts have found the petition date to be an appropriate date for valuation because

> As of this date, creditors' rights are fixed (as much as possible), the bankruptcy estate is created, and the value of the debtor's exemptions is determined. [T]he scheme of Chapter 13 in attempting to accommodate competing goals of financial rehabilitation for the debtor and preservation of the constitutionally protected, bargained-for rights of secured creditors is best served by valuing the collateral as of the date of filing.

*In re Dean*, 319 B.R. 474, 478 (Bankr. E.D. Va. 2004)(quoting *Johnson v. GMAC (In re Johnson)*, 165 B.R. 524, 528 (S.D.Ga.1994).

In this case, Truist Bank argues that the best valuation date is the date of Silverstein's appraisal, October 19, 2018. Edwin Taylors asks this court to value the Property as of the petition date. Debtor's closing argument did not suggest a preferred date for valuation. The Court finds that the Petition Date, September 20, 2018, is the proper valuation date.

---

[4] Silverstein's Report was admitted as Edwin Taylor's Ex. 1 (Doc 95-1).

[5] *In re Gilpin,* 479 B.R. 905, 907 (Bankr. M.D. Fla. 2011) ("A split of authority exists regarding the appropriate valuation date when a court is deciding whether to strip off a lien in a Chapter 13 case"); *In re Roach*, 2010 WL 234959 (Bankr. W.D. Mo.2010) (focusing on the purpose of the valuation and finding that because the purpose is to determine appropriate plan treatment, value should be determined as of the effective date of the plan); and *In re Aubain,* 296 B.R. 624, 636 (Bankr. E.D. N.Y.2003) (court should use a flexible approach, taking into consideration the purpose of the valuation as well as the equities involved).

[6] 11 U.S.C. § 506(a)(1); *See also, In re Dente/Pender*, 60 B.R. 164, 165 (Bankr. M.D. Fla. 1986)(while valuation may be proper as of a date after the commencement of a case in certain circumstances, valuation must be made as of the date of commencement for the purpose of determining the extent of an allowed secured claim § 506).

[7] *In re Gilpin*, 479 B.R. at 908.

**<u>Property's Value</u>**

Generally, a property valuation should be consistent with the proposed use of the property.[8] Here, however, Debtor did not testify. So, based on the Chapter 13 plans that she has filed in this Court, the Court can only conclude that it is her intent is to retain the Property <u>if</u> she can strip liens to levels that she can afford to pay in her Chapter 13 plan.

Based on this finding, and the advanced construction of the Property, the Court rejects the tear down valuation urged by Debtor's expert Mr. Baird. Although Mr. Baird, was generally credible, and the Court accepts his view that there is some "stigma" associated with the Property, Mr. Baird was very clear about what he was asked to do and the limited information that he was provided by Debtor and her fiancé. This Property is at least 60% complete and seems to have good bones. Accordingly, the Court does not conclude that it is a candidate for a "tear down" and views the traditional valuation analysis presented by Mr. Silverstein as more appropriate in assessing the value of this partially constructed residence.

The three accepted main methods to value real property are 1) comparable sales; 2) cost approach; and 3) income approach. The Comparable Sales method "entails considering sales of similarly situated parcels and using those sales, with adjustments to account for any relevant differences, to evaluate the value of the subject property."[9] The cost approach seeks to determine how much a property would cost to replace (meaning, rebuild) after subtracting accrued depreciation. The income approach is generally used on income producing property – apartment complexes, hotels, duplexes. Both appraisers in this case testified to using a comparable sales technique.

---

[8] *Associates Com. Corp. v. Rash*, 520 U.S. 953, 964 (1997)(stating Section 506(a) "calls for the value the property possesses in light of the "disposition or use" in fact "proposed," not the various dispositions or uses that might have been proposed")

[9] *United States v. Easements & Rights-of-Way Over a Total of 15.66 Acres of Land, More or Less, in Gordon Cty., Georgia*, 779 F. App'x 578, 582 (11th Cir. 2019)

Valuation of assets "is not an exact science and has inherent vagaries."[10] Courts have wide latitude in determining value.[11] A court may consider appraisals and appraisers' testimony as to a property's value, but it is not bound by them.[12] However, "when competing appraisals are submitted, the court is required to consider portions of each to arrive at what it believes to be a realistic market value for the property."[13] Heightened scrutiny is appropriate when two competent appraisals are presented by qualified appraisers stating widely divergent values.[14] Courts must be wary of appraisals which contain "unsupported but important assumptions, valuations which place property with a unique and extraordinary location on par with an ordinary lot, and comparable sales that are so dissimilar that they are of little use in supporting the opinion of value."[15] When competing appraisals are presented, "[r]ather than choosing one appraisal over another, that is accepting one and rejecting the other in its entirety, the better reasoned approach is to review all of the proposed comparable and include only those that assist the court in its evaluation."[16]

Mr. Silverstein's analysis is generally sound. Mr. Silverstein presented the Court with two "as is" valuations. Of the two values presented in his report, the Court accepts the "as is" market value established by Mr. Silverstein ($316,400) as opposed to the valuation unique to the Debtor ($431,400). Although, Debtor's Chapter 13 plan anticipates that she will retain the Property if she is able to strip down liens to amounts that she can afford, if she is not successful in her efforts to reduce the liens to affordable levels, there is no evidence that she will be able to keep the Property. Indeed, her bankruptcy schedules, strongly suggest that this may not be possible. Thus, for purposes of this valuation, the Court accepts Mr. Silverstein's market value of $316,400 with a few small adjustments.

---

[10] *In re Alexander*, 3:13-AP-544-JAF, 2014 WL 3672135, at *5 (Bankr. M.D. Fla. July 23, 2014)(quoting *First Am. Bank of Va. v. Monica Road Assocs. (In re Monica Road Assocs.),* 147 B.R. 385, 389 (Bankr.E.D.Va.1992))
[11] *Id.*
[12] *Id.; see also In re Brown*, 289 B.R. 235, 238 (Bankr. M.D. Fla. 2003)
[13] *Id.; see also In re Belmont Realty Corp.*, 113 B.R. 118, 121 (Bankr.D.R.I.1990).
[14] *In re Alexander*, 2014 WL 3672135, at *5
[15] *In re Belmont Realty Corp*., 113 B.R. at 119–21
[16] *In re Alexander*, 2014 WL 3672135, at *5 (quoting *In re Brown*, 289 B.R. at 238) Additionally, if the parties use common comparables but arrive at different adjusted sales prices, it is appropriate for the Court to review the adjustments and determine an appropriate adjusted sales price. *Id.*

Based on photographs included in Mr. Silverstein's report and the collective testimony of all of the witnesses who visited the Property, the Court concludes that the costs of correcting construction on the Property (as opposed to the costs of completion) is at least $20,000 and rejects Mr. Konig's figure of $6,500. The Court's estimate is consistent with Mr. Silverstein's calculation of depreciation, but the depreciation figure is only a check on the Court's finding and is not the basis of the finding. If a proper mold assessment ultimately shows that further remediation is necessary, the cost may be more. But based on this record, the Court is unable to make that determination.

The Court further finds that a small adjustment to Mr. Konig's cost of completion is also appropriate and determines that a more accurate cost of completion would be just over $140 per square foot. This adjustment accounts covers any "stigma" associated with the Property, and it provides some cover for the fact that the Property is likely less than 70% complete. Mr. Silverstein's report estimates completion to be between sixty and seventy percent, a fairly wide range.[17] To account for this potential range, Court finds the cost of completion to be $125,000.

With these two small adjustments, the Court finds that the "as is" market value on the Petition Date was $300,000. The Court will enter separate Orders on the pending Motions consistent with this ruling.

Service of this Order other than by CM/ECF is not required. Local Rule 9013-3(b).

[17] At 60% completion, Mr. Konig's formula for cost of completion would be $162,776 plus $6,500.